## F. W. DAVIS, v. TERRITORY OF OKLAHOMA

(Filed September 5, 1905.)

1. **CONTINUANCE—Affidavit for—Admitted.** Where in the trial of a criminal cause an affidavit for continuance is presented on behalf of a defendant upon the ground that a witness whose testimony is material to defendant's defense is absent notwithstanding due issue of process for his appearance, and the affidavit sets out what the absent witness would testify to if present, and the prosecution admit that if the absent witness were present he would so testify, and that the affidavit may be read in evidence as the deposition of the absent witness, it is not error for the district court to overrule the motion for a continuance, and proceed to the trial of the cause.

2. **MOTION FOR NEW TRIAL—Newly Discovered Evidence.** A motion for a new trial on the ground of newly discovered evidence which through the exercise of due diligence counsel for the defendant were unable to discover before the trial, and which said evidence as shown by the motion was the testimony of a witness who had testified on behalf of the Territory on the trial of the cause and whose testimony might have been discovered by the use of ordinary diligence, is properly overruled by the trial court.

(Syllabus by the Court.)

*Error from the District Court of Greer County; before James K. Beauchamp, Trial Judge*

*Stewart & Robinson* and *J. L. Carpenter*, for plaintiff in error.

*P. C. Simons*, Attorney General, *Don C. Smith*, Ass't and *Chas. M. Thacker*, County Attorney, for defendant in error.

Opinion of the court by

GILLETTE, J.: At the February, 1904, term of the district court of Greer county, Oklahoma Territory, the de-

fendant was indicted by the grand jury of said county, to-
gether with one Ed A. Davis and J. G. Smith, charged with
the offense of grand larceny. The indictment was returned
and filed on the 11th day of February, and charged the of-
fense to have been committed on the 23rd day of October,
1903. On the 13th day of February, 1904, the defendant
was arraigned, and entered a plea of not guilty, on the 15th
of February, the cause was set for trial on the 19th and the
defendant immediately on the case being set for trial obtained
a subpoena to be issued for one Ben Tigman, a resident of
Roger Mills county, and, as he states in his affidavit, "for-
warded to the sheriff of Roger Mills county."

The case came on for trial on the 19th of February, and
defendant applied for a continuance in consequence of the
absence of the said witness Ben Tigman, the affidavit for con-
tinuance alleging that the witness, if present, would testify
"that on a trip which he made into Roger Mills county, he had
met and conversed with the defendants; that on the morning
of the 23rd of October, 1903, he saw the defendants at the
Star wagon yard, stopped, tied his horse to their wagon, and
engaged into conversation with them; that during the con-
versation he tied a piece of rawhide hobble to their wagon
saying as he did so that he found it in the public highway
south of town." The Territory admitted the facts set out in
the affidavit, and thereupon the trial proceeded.

The evidence discloses that on the evening of the 23rd
day of October, 1903, the complaining witness H. C. Greer
left two wagons loaded with cotton standing in his cotton
field at a distance of about 150 yards from the highway, and
that at some time during the night some one took from these
two wagons about 900 pounds of cotton left therein. The

following morning, Greer, on returning to the field for the purpose of taking it to the gin, and observing that a large quantity had been removed from each of the wagons, immediately set about to find out what had become of it. He first noticed that there were numerous tracks of three different persons leading from the wagons to the road, the appearance indicating that the parties had passed back and forth between the wagons and the road several times. These tracks indicated that the one party had worn boots with a rather high heel with round headed nails on one side of the heel; another seemed to have worn a broad soled flat shoe, and the third a pair of slippers or soft light shoes. Following these tracks to the road it there appeared a wagon and team had been stopped for some time and cotton loaded into the wagon. The team appeared to have been shod, and to have been driven from that point towards the city of Mangum. It further appears from the evidence that the three men indicated in this case drove a wagon partly loaded with cotton into a wagon yard in the city of Mangum sometime during the night of October 23, 1903, and remained there until the following day, that early in the morning of the 24th two of the men drove the wagon and cotton to the gin and sold it, receiving $25.37 therefor, and afterwards returned the wagon and team to the wagon yard.

A piece of rawhide hobble was found at the place where the cotton had been loaded into the wagon on the highway and the balance of the hobble was found on the wagon of the defendants in the wagon yard at Mangum. The team driven by defendants to the wagon yard were shod. Two of the three defendants charged with the offense fled from the city of Mangum and were pursued by the sheriff ten or eleven miles

before being overtaken and arrested. The other was arrested in the city of Mangum. The elder Davis when arrested gave his name as Johnson. The younger said his name was Ray. Both have since admitted their names were Davis. All three were arrested on the 24th of October, the day following the disappearance of the cotton. The sheriff removed the footwear of the defendants and found one wore boots with a small heel, one broad soled shoes, and one slippers. These he took on October 25th to the field where the wagons had stood from which the cotton had been taken, and on trying the footwear of these parties in the tracks there found between the place where the wagons had stood and the highway where the cotton had been loaded into another wagon, found that this footwear fitted exactly into the tracks there found.

This was substantially all the evidence offered by the Territory, and the defendants offered no testimony except the affidavit for a continuance in which was set out what it claimed the witness. Ben Tigman would testify to if present 'and which had been admitted by the Territory at the beginning of the trial. The defendants were all tried together and all found guilty by the jury trying the case. The plaintiff in error, F. W. Davis, filed a motion for a new trial, and also a motion in arrest of judgment. These were duly presented to and considered and overruled by the court, and thereupon each of the defendants were sentenced to two years in the state prison. From this sentence and judgment the plaintiff in error brings the case by appeal to this court.

Several assignments of error are contained in the petition in error, but only two are presented in the brief of plaintiff in error, viz: (1) The court erred in overruling the

motion of plaintiff in error for a continuance; (2) said court erred in overruling motion of plaintiff in error for a new trial.

As to the first proposition the Territory admitted the witness would testify as set out in the affidavit, and at the conclusion of the evidence on the part of the Territory, the affidavit was read to the jury, and they were informed that the affidavit was received as the testimony of the witness. Counsel seem to be apprehensive that the jury did not give full credence to the facts stated in the affidavit. This may or may not be so, but in any event the jury would have exercised the same discretion in this respect as if the witness had been personally present and testifying.

In the argument of counsel to the effect that the defendant was forced to trial so speedily after his arraignment after indictment as that he was not given time to make a proper defense, we cannot concur. He offered no grounds for a continuance except the absence of one Tigman, who, he stated would testify as hereinbefore set out. It was proper on behalf of the Territory to admit that such witness would so testify, and proceed with the trial of the case. (*State v. Lund*, 49 Kan. 580, 31 Pac. 146; *State v. Stickney*, 53 Kan. 308, 36 Pac. 714.)

In the case last above referred to, the supreme court of Kansas, having this same proposition before it for determination, used the following language, viz:

"The state consented that the affidavit for continuance should be read as the deposition of the absent witness, and the court denied the continuance, and set the case to trial on December 21st. It thus appears that the trial of Stickney did not occur until eight days after his arrest and preliminary examination. It is true that he only procured counsel two days before the trial, but there was then time to ascertain

from the appellant the names of needed witnesses, and the testimony he expected to obtain from them. The only witness named in the affidavit, and whose testimony he hoped to procure, was Payne, and as the state consented to treat the affidavit as the deposition of the absent witness, it cannot be held that error was committed in denying the continuance."

There was, we think, no error in the trial court refusing a continuance of the case for the want of the testimony of a witness which was admitted, and which could be presented for the consideration of the jury. In this connection we think it proper to observe with reference to the testimony of such witness that it referred to only one circumstance offered in evidence, and which circumstance if eliminated altogether, would leave the verdict of the jury supported by sufficient evidence. The wagon partly loaded with cotton, driven by three men into the wagon yard at Mangum in the night time, taken out early in the morning by two of the defendants and the cotton alleged to have been stolen, unloaded and returned to the yard, and no explanation given as to when or where defendants obtained the cotton, the failure and refusal by defendants to give their true names, the flight of two of the respondents, together with the extraordinary correspondence of the tracks in the cotton field with each piece of the foot wear of the defendants (leaving out the hobble strap) was all before the court and jury at the time the demurrer to the evidence was interposed, and we have no hesitation in approving the order of the court overruling it.

The case of *Miller v. The United States*, 8 Ok. 315, relied upon by the plaintiff in error has no parallel in the case at bar. In that case Miller was arrested December 2nd, and the case set for trial December 3rd, time being refused to secure the attendance of witnesses material to his defense,

or for time in which to allow his counsel to properly prepare for trial, they being unable to see him until the hour of trial. In this case there was a week's time for preparation, and a continuance was asked to secure testimony upon the single point set out in the affidavit, which was admitted.

We have examined the evidence offered on the motion for a new trial, upon the ground of newly discovered evidence, and are of the opinion that the trial court committed no error in its ruling thereon. The witness Tinsley whose affidavit · is offered in support of the motion for a new trial, was before the court upon the trial as a witness, and the exercise of ordinary diligence would have brought this testimony to the attention of the jury, and we are further of the opinion that the allegations of this affidavit would not have justified the court below in setting aside the verdict rendered. Finding no error in the record the judgment of the trial court is affirmed.

Beauchamp, J., who presided in the court below, not sitting; all the other Justices concurring.